IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Linda M. Guyton, )<br>                     )<br>          Plaintiff, )<br>                     )<br>     vs.             )<br>                     )<br>Michael J. Astrue,   )<br>Commissioner of Social Security, )<br>                     )<br>          Defendant. )<br>_____) | Civil Action No. 6:06-2253-MBS-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits under Title XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed her application for supplemental security income (SSI) benefits on February 28, 2005, alleging that she became unable to work in 1992. The application was denied initially and on reconsideration by the Social Security Administration. On October 6, 2006, the plaintiff requested a hearing. The administrative law judge, before

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

whom the plaintiff and her attorney appeared on March 3, 2006, considered the case *de novo*, and on March 28, 2006, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on June 6, 2006. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge (verbatim):

> (1)    The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 et seq.).
>
> (2)    The claimant has the following severe impairments: respiratory problems, and visual loss. There is no evidence of a severe mental or cognitive impairment (20 CFR 416.920(c)).
>
> (3)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> (4)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; can sit, stand, and walk about six hours; and push and pull objects. She has visual restrictions upon far acuity and should avoid working with small print or small objects at a distance. She should avoid moderate exposure to fumes, dust, odor, gases, and poor ventilation. She has no more than mild limitations upon activities of daily living, of social functioning, and of concentration, persistence, and pace and so has a no severe mental impairment.
>
> (5)    The claimant is capable of performing past relevant work as described above. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

2

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

3

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

4

**FACTS PRESENTED**

The plaintiff was born in 1945 and completed the 9th grade (Tr. 25, 213). From 1989 through 1992, she worked at Barrett & Blandford Associates, Inc., an optical company that developed gun lenses for the military (Tr. 43, 217).  There, she initially worked as a glass lens "blocking and grinding" machine operator, but she was later transferred into the job of "expediter" and performed that job until the plant went out of business at the end of 1992 (Tr. 220-23, 228-29).  The plaintiff later worked briefly as a housekeeper but did not perform that job at the substantial gainful activity level (Tr. 13, 223).  When she filed her application for benefits in February 2005, she alleged that she became disabled on December 31, 1992,[2] (when she was 47 years old) (Tr. 59).  She claimed that she was unable to work due to asthma, a ruptured disc, tendinitis, varicose veins, emphysema, a cyst on her left knee, deafness in her left ear, partial blindness in her left eye, arthritis in her spine and diabetes (Tr. 59).  The plaintiff was 60 years old at the time of the ALJ's decision (Tr. 25).

The record reveals that on February 9, 2005, the plaintiff presented to Dr. Matthew Cline and reported breathing difficulties.  Dr. Cline noted that she had a history of worsening asthma and had required several hospitalizations.  He also noted that the plaintiff had "no inhalers whatsoever" over the last week and that she grew tired when walking a few steps (Tr. 102, 121-23).  He transported her to the emergency room, and she was subsequently admitted for treatment for chronic obstructive pulmonary disease (COPD) and asthma exacerbations.  Her bronchospasm was initially "slow to respond" to medications, nebulizer treatments and supplemental oxygen, but by the time of her admission she had "significantly less respiratory distress."  During her stay, the plaintiff developed hyperglycemia in connection with her steroid treatments and also had brief blood pressure

---

[2]Although the plaintiff alleged disability since 1992, SSI is not payable for any month prior to the month after the month in which the application was filed, i.e., March 2005 in this case.  *See* 20 C.F.R. §416.335.

5

elevations.  Upon discharge on February 13, she was "bronchospasm free and [] feeling better."  The attending physician encouraged her to stop smoking and noted that she had improved significantly with hospitalization (Tr. 65-100).

On February 16, 2005, the plaintiff had a follow-up appointment with Dr. Cline's colleague, Dr. William M. Turner, and stated that she stopped smoking the day she was hospitalized.  Dr. Turner noted that she was "much improved" and "feeling better."  Her lungs were clear, without any wheezing or respiratory distress (Tr. 102).

On February 19, 2005, the plaintiff returned to the emergency room and reported abdominal pain and vomiting.  She was treated for acute gastroenteritis and discharged (Tr. 104-20).

In a daily activities report dated March 14, 2005, the plaintiff reported that she cared for her own personal needs, but required help with dressing.  She indicated that she could not "stand to[o] long or lift to[o] much," and that she could not perform household chores such as sweeping, mopping or cooking.  She stated that she visited with friends or relatives twice per week and that she sang with a gospel choir "all over South Carolina sometimes three or [four] times a week" (Tr. 51).[3]

On April 28, 2005, the plaintiff underwent a consultative evaluation by Dr. Sidharth C. Patel in connection with her application for benefits.  She reported that she had been asthmatic since age 12, that it had "usually been poorly controlled" and that it had worsened in the previous year.  She said she had shortness of breath (dyspnea) when climbing stairs, caring for her personal needs, and doing housework.  She said that using a nebulizer and stopping smoking had helped her symptoms.  She also said she could not do her normal activities, such as singing gospel.  Dr. Patel noted that the plaintiff had a remote history of back surgery and that she continued to have back pain that worsened with

---

[3]The plaintiff checked a line in the report saying she could no longer perform these activities, but then reported that she did in fact perform them (Tr. 51).

6

lifting, stooping, squatting and bending.  The plaintiff said she was "miserable" because of back pain and that she "[could] not do anything."  She also reported that she had varicose veins and a lump above her left knee.  She said she occasionally used a cane to walk.  She further reported reduced hearing in her left ear since age nine and partial loss of vision in her left eye "from birth."  She said she could not read with the left eye and that an ophthalmologist told her glasses would not help.  The plaintiff further reported a recent diagnosis of steroid-induced diabetes and that she was not currently taking any medications for it.  Finally, she said she had difficulty remembering dates and names.  As to her abilities, the plaintiff estimated she could walk 40 yards, sit 30 minutes, and stand 10 minutes at a time (Tr. 154-55).

Upon Dr. Patel's examination, the plaintiff's lungs were "clear except for reduced air entry in all areas," and there was no respiratory distress.  She could hear a whispered voice from five feet away in her right ear, but not the left.  Her uncorrected vision was 20/70 in the left eye, 20/50 in the right eye, and 20/40 with both eyes.  She could flex her left knee to 120 degrees from full extension, then stopped due to pain.  Her right knee was normal.  The plaintiff had tenderness in her lower back, but straight leg-raising, station and gait were all normal.  A lumbar x-ray showed moderately severe disc narrowing at L4-5 and L5-S1, with intact alignment.  On memory testing, the plaintiff's recall was "somewhat poor at one out of three."  Dr. Patel noted that her asthma continued despite treatment and smoking cessation and that, while she subjectively reported easy dyspnea, she had "minimal, if any" dyspnea on maneuvers during the examination.  He concluded:

> [t]his lady should not [have] trouble doing work requiring hand use or overhead work. She may be able to engage in jobs that allow intermittent sitting, standing, and brief periods of walking. Likewise, she will be limited to modest lifting and intermittent bending only due to her chronic low back pain.

(Tr. 154-59).

7

On May 27, 2005, State agency physician Dr. Seham El Ibiary reviewed the plaintiff's records and found she had the physical residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand/walk six hours in an eight-hour day, sit six hours in an eight-hour day, and push/pull without limitation beyond the lift/carry weight restrictions. Dr. El Ibiary found she could occasionally climb, balance and stoop, and that she had limited far visual acuity, requiring her to avoid working with "small print." He also found she needed to avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation (Tr. 184-87).

On May 31, 2005, State agency psychologist Lisa Varner, Ph.D., reviewed the plaintiff's records and determined that she did not have a severe mental impairment (Tr. 161-73).

On September 14, 2005, State agency physician Dr. Hugh Clarke reviewed the plaintiff's records and found she had the physical residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand/walk six hours in an eight-hour day, sit six hours in an eight-hour day, and push or pull without limitation beyond the lift/carry weight restrictions. He further found she could occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop, and crawl; and occasionally kneel and crouch. In support of those findings, he noted that respiratory examinations showed the plaintiff's lungs were clear, with no distress, and that she had a normal gait, good spine range of motion, full knee range of motion and mild degenerative joint disease. Dr. Clarke also noted that the plaintiff had limited far visual acuity and that she should "avoid working with small print or small objects at a distance." He did not find any communicative or environmental limitations, except that the plaintiff needed to avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation (Tr. 175-78).

On November 4, 2005, the plaintiff presented to Dr. Dennis Jansen with complaints of increased dyspnea. She said she had used four inhalers in the past month

8

and that a full night of nebulizer use did not provide any relief.  On examination, she had wheezing and rhonchi throughout both lung fields.  Dr. Jansen assessed an exacerbation of COPD secondary to an upper respiratory infection, and hospitalized her.  A lung x-ray taken that day showed "mild chronic lung changes."  Throughout her hospital course, the plaintiff had stable vital signs, but on one examination she had "coarse crackles throughout her lung fields as well as wheezes" (Tr. 191-95).

On November 8, 2005, during her hospitalization, the plaintiff underwent a consultative evaluation by Dr. Charles Thompson, who stated, "[s]he has not been able to work due to the severity of her asthma."  On examination, the plaintiff's chest was hyperexpanded with diminished breath sounds, bilateral wheezes, and bilateral rhonchi with forced exhalation.  Dr. Thompson stated that the plaintiff needed pulmonary function studies to fully assess her asthma and COPD.  He concluded, "[s]he needs disability as she will have a hard time working with her current condition."  The plaintiff was discharged on November 14, 2005 (Tr. 194-99).

At the administrative hearing, the plaintiff testified that she initially worked at "blocking and grinding" ground glass, which required lifting three pounds at most (Tr. 220), and that she could sit or stand at will on that job (Tr. 222).  She said that the machine did the work, and that she would "just push a button and cut it off and on" (Tr. 222).  The plaintiff said she was eventually transferred to an "expedit[er]" job because she could not see well enough to "check the pits and stuff in the glass" as required in the blocker/grinder job (Tr. 221, 223, 228).  As an expediter, she "[j]ust moved the carts back and forth," transporting the glass to quality control and back to the assemblers, and that the job did not involve lifting (Tr. 221, 229).  She said she did not have to stand and walk all the time on that job (Tr. 221).  She said that she was laid off when the company went out of business in late 1992 or early 1993, and subsequently she collected unemployment insurance (Tr.

217-18, 229, 230). The plaintiff testified that if she could continue working for a company like Barrett and Blandford, she would "go back today" (Tr. 229).

As to her impairments, the plaintiff testified that she was "going blind in [her] left eye," and that a doctor said glasses would not help (Tr. 223). She indicated that she had done some housekeeping work and babysitting in recent years (Tr. 223-24), but that she was not currently working (Tr. 224). She said her worst problem was her breathing difficulty, because she could not climb stairs, lift children or cook (Tr. 224). She said she still had back problems and used a cane to walk (Tr. 227). She also reported problems on her "whole left side," including left shoulder and knee pain (Tr. 228). She said she took ibuprofen for pain (Tr. 238-39). She said she saw Dr. Thompson every three months (Tr. 232). The plaintiff said she no longer used supplemental oxygen at home, and that she currently used nebulizers and medication (Tr. 233).

The plaintiff testified that during a typical day, she tried to walk because she did not like "sitting around" (Tr. 233). She said she would walk to her porch "and look around and stand a minute and sit a minute, stand a minute and sit a minute. And then back in the kitchen where my cousin is cooking and watch her, and sit down and talk with her" (Tr. 233). She said she would "get stuck" when sitting, and "have to make [her]self get up" (Tr. 236). She said she attended church three times per month (Tr. 236). She said she stopped singing with a gospel group nine months before the hearing (Tr. 236).

## ANALYSIS

The ALJ found that the plaintiff suffered from the severe impairments of respiratory problems and vision loss. He further found that she could perform light work with visual restrictions and avoiding moderate exposure to fumes, dust, odor, gases, and poor ventilation, and that she could thus perform her past relevant work. The plaintiff alleges that the ALJ erred by: (1) classifying her past relevant work as sedentary rather

than light; (2) finding that she could perform her past relevant work; (3)  failing to properly assess her credibility; (4) failing to properly assess the opinion of Dr. Thompson; and (5) failing to apply the Medical-Vocational Guidelines ("the Grids"), which would direct a finding of disability.

The plaintiff first argues that the ALJ erred by classifying her work as an expediter as sedentary rather than light and by finding that she could perform her past relevant work.  The plaintiff last worked in 1992 for a company that produced lenses for the military (Tr. 217).  The plaintiff first held a job with that company as a lens grinder (Tr. 220). She was moved to a job as an "expediter" which required her to push a cart full of lenses from production to quality control and back (Tr. 220-21).  She testified she was moved from the job as grinder to expediter because she couldn't see well enough to perform the job as grinder satisfactorily (Tr. 220-221).  The "blocking and grinding" job required the plaintiff to frequently lift blocks of lenses weighing about three pounds (Tr. 220).  The job allowed the plaintiff to either sit or stand and monitor the machine that did the grinding work (Tr. 222). The plaintiff had to push a button to turn the machine on and off.  According to the DOT, the job requires the removing of "rough edges and surface convexities from formed glassware ..." and is designated "L" for strength (Tr. 55).  The job may also require measuring of the glass for conformance to specifications (Tr. 55).  The plaintiff testified that she was removed from this job because she could not see "to check the pits and stuff in the glass" (Tr. 221).  Both jobs were performed inside the production facility on the floor (Tr. 221).  She performed that job until the plant closed at the end of 1992 (Tr. 220-23, 228-29).

The ALJ found that the plaintiff's past work as a grinder and expediter "can be considered sedentary in nature, or at most, very, very light" (Tr. 15).  "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. §404.1560(b)(1).  "Work performed 15 years or more prior to the time of adjudication of the claim . . . is ordinarily not

considered relevant." Social Security Ruling (SSR) 82-62, 1982 WL 31386, *1. Fifteen years prior to the ALJ's 2006 decision was 1991.

As set forth above, the plaintiff first worked as a glass lens blocking/grinding machine operator but was transferred later to the job of expediter, and she performed that job until the plant closed at the end of 1992 (Tr. 220-23, 228-29). Specific time frames for each job are not indicated in the record, so it is unclear whether the blocker/grinder job was performed within the 15 year period so as to constitute past relevant work. The plaintiff testified that as an expediter, she "[j]ust moved the carts back and forth," transporting the glass to Quality Control and back to the assemblers for re-grinding, and that the job did not involve any lifting at all (Tr. 221, 229). When asked whether she had to stand and walk all the time, she responded, "[n]ot really. It was mostly like, whenever they needed something to go back. You just had to check and see what was going on" (Tr. 221). She testified that when she was not moving the carts around, she "mostly would go to other jobs and watch and see what they were doing" (Tr. 221-22).

The defendant "acknowledges that Plaintiff's past work may fall into the light category rather than sedentary" (def. brief 10), but argues that there was no reversible error because it would still align with the plaintiff's residual functional capacity. However, the plaintiff argues that she retained the residual functional capacity to perform, at most, sedentary work. As set forth below, this court finds that in his assessment of the plaintiff's residual functional capacity, the ALJ erred in his analysis of the plaintiff's credibility and in ignoring the opinion of Dr. Thompson.

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment

> reasonably likely to cause the pain claimed, that the intensity
> and persistence of the claimant's pain, and the extent to which
> it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)   the individual's daily activities;

(2)   the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)   factors that precipitate and aggravate the symptoms;

(4)   the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)   treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)   any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

The ALJ found the plaintiff's testimony "not entirely credible" (Tr. 15). In support of this finding, the ALJ cited the following:

(1)    He saw no signs of a significant mental impairment.

(2)    While the plaintiff complained of vision problems, the ALJ "believed" she could still push a button like she did in her former job.

(3)    There was no evidence the plaintiff had hypertension, and she has diabetes only when using steroids.

(4)    The plaintiff goes to church, enjoys gospel music, and playing cards.

(5)    Dr. Patel never opined that the plaintiff was totally disabled.

(6)    The plaintiff's medical evidence does not document any problems back to 1992.

(7)    The plaintiff worked recently as a housekeeper, companion, and babysitter, but not at substantial gainful activity levels.

(Tr. 15). Clearly, a claimant is not required to be bedridden or completely helpless in order to be found to be disabled. *Totten v. Califano*, 624 F.2d 10, 11-12 (4th Cir. 1980). Further, the ALJ failed to consider the evidence that the plaintiff was credible – including the opinion as to her credibility of a state agency consultant to which the ALJ otherwise gave "a lot of weight . . . [because] it is reasonable and supported by documentation" (Tr. 15, 188). Upon remand, the ALJ should be instructed to evaluate the plaintiff's subjective complaints as set forth above.

The plaintiff next argues that the ALJ erred in failing to address the opinion of Dr. Thompson in his decision. On November 8, 2005, during her hospitalization, the

14

plaintiff underwent a consultative evaluation at the request of the attending physician by Dr. Thompson, who stated, "She has not been able to work due to the severity of her asthma." On examination, the plaintiff's chest was hyperexpanded with diminished breath sounds, bilateral wheezes, and bilateral rhonchi with forced exhalation. Dr. Thompson stated that the plaintiff needed pulmonary function studies to fully assess her asthma and COPD. He concluded, "She needs disability as she will have a hard time working with her current condition." The plaintiff was discharged on November 14, 2005 (Tr. 194-99).

The defendant argues that any error in the ALJ's failure to address Dr. Thompson's opinion was harmless because the opinion was solely about a matter reserved for the Commissioner and was inconsistent with the opinions of another consultative examiner and two State agency physicians. The type of relationship Dr. Thompson had with the plaintiff would affect the weight afforded his opinion. 20 C.F.R. § 404.1527(d)(2); *see also* 20 C.F.R. § 404.1527 (a)-(c). The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5.

As argued by the plaintiff, Dr. Thompson's opinion that the plaintiff is disabled was not given for the purpose of the plaintiff's claim for benefits but as part of her treatment. Further, the ALJ admittedly relied heavily upon the opinion of a non-examining consultative opinion in concluding the plaintiff could perform her past work (Tr. 15) ("As for opinion evidence, I assign a lot of weigh (sic) to the state agency's assessment as it is reasonable and supported by the documentation."). Had the ALJ concluded that the plaintiff did not retain the residual functional capacity to perform her past work, the sequential evaluation would have proceeded to the fifth step. Applying the Grids to the plaintiff's age, residual

functional capacity, and education would have directed a finding of "disabled." Therefore, the ALJ's failure to even consider the opinion of Dr. Thompson was not harmless error. Accordingly, upon remand, the ALJ should be instructed to evaluate whether Dr. Thompson should be considered a treating or consulting physician and to discuss and give the appropriate weight to the opinion of Dr. Thompson.

Lastly, the plaintiff argues that the ALJ should have applied the Grids, as application of the Grids to the plaintiff's age, education, and work experience would direct a finding of disability. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rules 201.01 and 202.01. Based upon the foregoing, upon remand, the ALJ should be instructed to issue a new decision in accordance with the proper legal standards discussed above. Should the ALJ find upon remand that the plaintiff cannot perform her past relevant work as an expediter, he should be instructed to apply the Grids to the plaintiff's age, education, and work experience.

### CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe
United States Magistrate Judge

April 25, 2007

Greenville, South Carolina

16